IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of the date first written above by their respective officers thereunto duly authorized.

**THE COMPANY:**

**LEGACY PHYSICIAN PARTNERS, LLC**

By: _____
Name: Chris Kelly
Title: Manager

**THE MEMBERS:**

_____
Name: Don Bivacca

_____
Name: Chris Kelly

_____
Name: Brady Sturgeon

_____
Name: Brandt Gamble

_____
Name: Michele Sexton

42

4819-6733-0120 v6
2939908-000001

# APPENDIX A

## DEFINITIONS

"**Acceptance Notice**" has the meaning set forth in Section 9.01(d).

"**Adjusted Capital Account Deficit**" means, with respect to any Member, the deficit balance, if any, in such Member's Capital Account as of the end of the relevant Fiscal Year, after giving effect to the following adjustments:

    (a)    crediting to such Capital Account any amount which such Member is obligated to restore or is deemed to be obligated to restore pursuant to Treasury Regulations Sections 1.704-1(b)(2)(ii)(c), 1.704-2(g)(1) and 1.704-2(i); and

    (b)    debiting to such Capital Account the items described in Treasury Regulation Section 1.704-1(b)(2)(ii)(d)(4), (5) and (6).

"**Adjusted Taxable Income**" of a Member for a Fiscal Year (or portion thereof) with respect to Units held by such Member means the federal taxable income allocated by the Company to the Member with respect to such Units (as adjusted by any final determination in connection with any tax audit or other proceeding) for such Fiscal Year (or portion thereof); *provided*, that such taxable income shall be computed (i) minus any excess taxable loss or excess taxable credits of the Company for any prior period allocable to such Member with respect to such Units that were not previously taken into account for purposes of determining such Member's Adjusted Taxable Income in a prior Fiscal Year to the extent such loss or credit would be available under the Code to offset income of the Member (or, as appropriate, the direct or indirect members of the Member) determined as if the income, loss, and credits from the Company were the only income, loss, and credits of the Member (or, as appropriate, the direct or indirect members of the Member) in such Fiscal Year and all prior Fiscal Years, and (ii) taking into account any special basis adjustment with respect to such Member resulting from an election by the Company under Code Section 754.

"**Affiliate**" means, with respect to any Person, any other Person who, directly or indirectly (including through one or more intermediaries), controls, is controlled by, or is under common control with, such Person. For purposes of this definition, "control," when used with respect to any specified Person, shall mean the power, direct or indirect, to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities or partnership or other ownership interests, by contract or otherwise; and the terms "controlling" and "controlled" shall have correlative meanings.

"**Agreement**" means this Limited Liability Company Agreement, as executed and as it may be amended, modified, supplemented or restated from time to time, as provided herein.

"**Applicable Law**" means all applicable provisions of (a) constitutions, treaties, statutes, laws (including the common law), rules, regulations, decrees, ordinances, codes, proclamations, declarations or orders of any Governmental Authority; (b) any consents or approvals of any Governmental Authority; and (c) any orders, decisions, advisory or interpretative opinions, injunctions, judgments, awards, decrees of, or agreements with, any Governmental Authority.

"**Award Agreements**" has the meaning set forth in Section 3.03(a).

43

4819-6733-0120 v6
2939908-000001

"**Bankruptcy**" means, with respect to a Member, the occurrence of any of the following: (a) the filing of an application by such Member for, or a consent to, the appointment of a trustee of such Member's assets; (b) the filing by such Member of a voluntary petition in bankruptcy or the filing of a pleading in any court of record admitting in writing such Member's inability to pay its debts as they come due; (c) the making by such Member of a general assignment for the benefit of such Member's creditors; (d) the filing by such Member of an answer admitting the material allegations of, or such Member's consenting to, or defaulting in answering a bankruptcy petition filed against such Member in any bankruptcy proceeding; or (e) the expiration of sixty (60) days following the entry of an order, judgment or decree by any court of competent jurisdiction adjudicating such Member a bankrupt or appointing a trustee of such Member's assets.

"**BBA**" has the meaning set forth in Section 12.04.

"**BBA Procedures**" has the meaning set forth in Section 12.04.

"**Board**" has the meaning set forth in Section 8.01.

"**Book Depreciation**" means, with respect to any Company asset for each Fiscal Year, the Company's depreciation, amortization, or other cost recovery deductions determined for federal income tax purposes, except that if the Book Value of an asset differs from its adjusted tax basis at the beginning of such Fiscal Year, Book Depreciation shall be an amount which bears the same ratio to such beginning Book Value as the federal income tax depreciation, amortization, or other cost recovery deduction for such Fiscal Year bears to such beginning adjusted tax basis; *provided*, that if the adjusted basis for federal income tax purposes of an asset at the beginning of such Fiscal Year is zero and the Book Value of the asset is positive, Book Depreciation shall be determined with reference to such beginning Book Value using any permitted method selected by the Board in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv)(g)(3).

"**Book Value**" means, with respect to any Company asset, the adjusted basis of such asset for federal income tax purposes, except as follows:

(a) the initial Book Value of any Company asset contributed by a Member to the Company shall be the gross Fair Market Value of such Company asset as of the date of such contribution;

(c) immediately prior to the Distribution by the Company of any Company asset to a Member, the Book Value of such asset shall be adjusted to its gross Fair Market Value as of the date of such Distribution;

(d) the Book Value of all Company assets shall be adjusted to equal their respective gross Fair Market Values, as determined by the Board, as of the following times:

    (i) the acquisition of an additional Membership Interest in the Company by a new or existing Member in consideration of a Capital Contribution of more than a *de minimis* amount;

    (ii) the Distribution by the Company to a Member of more than a *de minimis* amount of property (other than cash) as consideration for all or a part of such Member's Membership Interest in the Company;

44

4819-6733-0120 v6
2939908-000001

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
Exhibit    Page 3 of 16

(iii) the grant to a Service Provider of more than a de minimis amount of Incentive Units (when compared to the total number of all Units outstanding); and

(iv) the liquidation of the Company within the meaning of Treasury Regulation Section 1.704-1(b)(2)(ii)(g);

*provided*, that adjustments pursuant to clauses (i), (ii) and (iii) above need not be made if the Board reasonably determines that such adjustment is not necessary or appropriate to reflect the relative economic interests of the Members and that the absence of such adjustment does not adversely and disproportionately affect any Member;

(e) the Book Value of each Company asset shall be increased or decreased, as the case may be, to reflect any adjustments to the adjusted tax basis of such Company asset pursuant to Code Section 734(b) or Code Section 743(b), but only to the extent that such adjustments are taken into account in determining Capital Account balances pursuant to Treasury Regulation Section 1.704-1(b)(2)(iv)(m); *provided*, that Book Values shall not be adjusted pursuant to this paragraph (d) to the extent that an adjustment pursuant to paragraph (c) above is made in conjunction with a transaction that would otherwise result in an adjustment pursuant to this paragraph (d); and

(f) if the Book Value of a Company asset has been determined pursuant to paragraph (a) or adjusted pursuant to paragraphs (c) or (d) above, such Book Value shall thereafter be adjusted to reflect the Book Depreciation taken into account with respect to such Company asset for purposes of computing Net Income and Net Losses.

"**Business Day**" means a day other than a Saturday, Sunday or other day on which commercial banks in the City of Nashville are authorized or required to close.

"**Budget**" has the meaning set forth in Section 12.03.

"**Call Purchase Price**" means the Cause Purchase Price or Fair Market Value, as applicable pursuant to Section 10.05(a).

"**Capital Account**" has the meaning set forth in Section 5.03.

"**Capital Contribution**" means, for any Member, the total amount of cash and cash equivalents and the Book Value of any property contributed to the Company by such Member.

"**Cause**," with respect to any particular Service Provider, has the meaning set forth in any effective Award Agreement, employment agreement or other written contract of engagement entered into between the Company and such Service Provider, or if none, then "Cause" means any of the following:

(a) such Service Provider's repeated failure to perform substantially his duties as an employee or other associate of the Company (other than any such failure resulting from his Disability) which failure, whether committed willfully or negligently, has continued unremedied for more than fifteen (15) days after the Company has provided written notice thereof; provided, that a failure to meet financial performance expectations shall not, by itself, constitute a failure by the Service Provider to substantially perform his duties;

(b) such Service Provider's fraud or embezzlement;

45

4819-6733-0120 v6
2939908-000001

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
Exhibit    Page 4 of 16

(c) such Service Provider's material dishonesty or breach of fiduciary duty against the Company;

(d) such Service Provider's willful misconduct or gross negligence which is injurious to the Company;

(e) any conviction of, or the entering of a plea of guilty or nolo contendere to, a crime that constitutes a felony (or any state-law equivalent) or that involves moral turpitude, or any willful or material violation by such Service Provider of any federal, state or foreign securities laws;

(f) any conviction of any other criminal act or act of material dishonesty, disloyalty or misconduct by such Service Provider that has a material adverse effect on the property, operations, business or reputation of the Company;

(g) the unlawful use (including being under the influence) or possession of illegal drugs by such Service Provider while performing any duties or responsibilities with the Company;

(h) the material violation by such Service Provider of any rule or policy of the Company; or

(i) the material breach by such Service Provider of any covenant undertaken in ARTICLE XI herein, any effective Award Agreement, employment agreement or any written non-disclosure, non-competition, or non-solicitation covenant or agreement with the Company.

"Cause Purchase Price" has the meaning set forth in Section 10.05(a)(i).

"Certificate of Formation" has the meaning set forth in the Recitals.

"Change of Control" means: (a) the sale of all or substantially all of the consolidated assets of the Company and the Company Subsidiaries to a Third Party Purchaser; (b) a sale resulting in no less than a majority of the Units on a Fully Diluted Basis being held by a Third Party Purchaser; or (c) a merger, consolidation, recapitalization or reorganization of the Company with or into a Third Party Purchaser that results in the inability of the Members to designate or elect a majority of the Managers (or the board of directors (or its equivalent) of the resulting entity or its parent company).

"Code" means the Internal Revenue Code of 1986, as amended.

"Company" has the meaning set forth in the Preamble.

"Company Interest Rate" has the meaning set forth in Section 7.05(c).

"Company Minimum Gain" means "partnership minimum gain" as defined in Section 1.704-2(b)(2) of the Treasury Regulations, substituting the term "Company" for the term "partnership" as the context requires.

"Competing Services" has the meaning set forth in Section 11.2 (c).

"Confidential Information" has the meaning set forth in Section 11.01(a).

46

"Covered Person" has the meaning set forth in Section 14.01(a).

"Delaware Act" means the Delaware Limited Liability Company Act, Title 6, Chapter 18, §§ 18-101 *et seq.*, and any successor statute, as it may be amended from time to time.

"Delay Condition" means any of the following conditions: (a) the Company is prohibited from purchasing any Incentive Units by any Financing Document or by Applicable Law; (b) a default has occurred under any Financing Document and is continuing; (c) the purchase of any Incentive Units would, or in the good-faith opinion of the Board could, result in the occurrence of an event of default under any Financing Document or create a condition that would or could, with notice or lapse of time or both, result in such an event of default; or (d) the purchase of any Incentive Units would, in the good-faith opinion of the Board, be imprudent in view of the financial condition of the Company, the anticipated impact of the purchase of such Incentive Units on the Company's ability to meet its obligations under any Financing Document or otherwise in connection with its business and operations.

"Disability" with respect to any Service Provider, has the meaning set forth in any effective Award Agreement, employment agreement or other written contract of engagement entered into between the Company and such Service Provider, or if none, then "Disability" means such Service Provider's incapacity due to physical or mental illness that: (a) shall have prevented such Service Provider from performing his duties for the Company on a full-time basis for more than ninety (90) or more consecutive days or an aggregate of one hundred eighty (180) days in any 365-day period; or (b)(i) the Board determines, in compliance with Applicable Law, is likely to prevent such Service Provider from performing such duties for such period of time and (ii) thirty (30) days have elapsed since delivery to such Service Provider of the determination of the Board and such Service Provider has not resumed such performance (in which case the date of termination in the case of a termination for "Disability" pursuant to this clause (b) shall be deemed to be the last day of such 30-day period).

"Distribution" means a distribution made by the Company to a Member, whether in cash, property or securities of the Company and whether by liquidating distribution or otherwise; *provided*, that none of the following shall be a Distribution: (a) any redemption or repurchase by the Company or any Member of any Units or Unit Equivalents; (b) any recapitalization or exchange of securities of the Company; (c) any subdivision (by a split of Units or otherwise) or any combination (by a reverse split of Units or otherwise) of any outstanding Units; or (d) any fees or remuneration paid to any Member in such Member's capacity as a Service Provider for the Company. "Distribute" when used as a verb shall have a correlative meaning.

"Drag-along Member" has the meaning set forth in Section 10.04(a).

"Drag-along Notice" has the meaning set forth in Section 10.04(d).

"Drag-along Sale" has the meaning set forth in Section 10.04(a).

"Dragging Member" has the meaning set forth in Section 10.04(a).

"Electronic Transmission" means any form of communication not directly involving the physical transmission of paper that creates a record that may be retained, retrieved and reviewed by a recipient thereof and that may be directly reproduced in paper form by such a recipient through an automated process.

"Estimated Tax Amount" of a Member for a Fiscal Year means the Member's Tax Amount for such Fiscal Year as estimated in good faith from time to time by the Board. In making such estimate, the Board shall take into account amounts shown on Internal Revenue Service Form 1065 filed by the Company and similar state or local forms filed by the Company for the preceding taxable year and such other adjustments as in the reasonable business judgment of the Board are necessary or appropriate to reflect the estimated operations of the Company for the Fiscal Year.

"Excess Amount" has the meaning set forth in Section 7.04(b).

"Exercise Period" has the meaning set forth in Section 9.01(d).

"Exercising Member" has the meaning set forth in Section 9.01(e).

"Fair Market Value" of any asset as of any date means the purchase price that a willing buyer having all relevant knowledge would pay a willing seller for such asset in an arm's length transaction, as determined in good faith by the Board based on such factors as the Board, in the exercise of its reasonable business judgment, considers relevant.

"Family Members" has the meaning set forth in Section 10.02.

"Financing Document" means any credit agreement, guarantee, financing or security agreement or other agreements or instruments governing indebtedness of the Company.

"Fiscal Year" means the calendar year, unless the Company is required to have a taxable year other than the calendar year, in which case Fiscal Year shall be the period that conforms to its taxable year.

"Forfeiture Allocations" has the meaning set forth in Section 6.02(e).

"Fully Diluted Basis" means, as of any date of determination, (a) with respect to all the Units, all issued and outstanding Units of the Company and all Units issuable upon the exercise of any outstanding Unit Equivalents as of such date, whether or not such Unit Equivalent is at the time exercisable, or (b) with respect to any specified type, class or series of Units, all issued and outstanding Units designated as such type, class or series and all such designated Units issuable upon the exercise of any outstanding Unit Equivalents as of such date, whether or not such Unit Equivalent is at the time exercisable.

"GAAP" means United States generally accepted accounting principles in effect from time to time.

"Governmental Authority" means any federal, state, local or foreign government or political subdivision thereof, or any agency or instrumentality of such government or political subdivision, or any self-regulated organization or other non-governmental regulatory authority or quasi-governmental authority (to the extent that the rules, regulations or orders of such organization or authority have the force of law), or any arbitrator, court or tribunal of competent jurisdiction.

"Incentive Liquidation Value" means, as of the date of determination and with respect to the relevant new Incentive Units to be issued (if any), the aggregate amount that would be distributed to the Members pursuant to Section 7.02, if, immediately prior to the issuance of the relevant new Incentive Units, the Company sold all of its assets for Fair Market Value and

48
4819-6733-0120 v6
2939908-000001

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
               Exhibit    Page 7 of 16

immediately liquidated, the Company's debts and liabilities were satisfied and the proceeds of the liquidation were distributed pursuant to Section 13.03(c).

"**Incentive Plan**" has the meaning set forth in Section 3.03(a).

"**Incentive Units**" means the Units having the privileges, preference, duties, liabilities, obligations and rights specified with respect to "Incentive Units" in this Agreement and includes both Restricted Incentive Units and Unrestricted Incentive Units.

"**Initial Cost**" means, with respect to any Unit, the purchase price paid to the Company with respect to such Unit by the Member to whom such Unit was originally issued.

"**Initial Member**" has the meaning set forth in the term "Member."

"**Intended Call Closing Date**" has the meaning set forth in Section 10.05(c)(i).

"**Initial Member**" has the meaning set forth in the term "Member."

"**Issuance Notice**" has the meaning set forth in Section 9.01(c).

"**Joinder Agreement**" means the joinder agreement in form and substance attached hereto.

"**Liquidator**" has the meaning set forth in Section 13.03(a).

"**Losses**" has the meaning set forth in Section 14.03(a).

"**Manager**" has the meaning set forth in Section 8.01.

"**Managers Schedule**" has the meaning set forth in Section 8.02(c).

"**Member**" means (a) each Person identified on the Members Schedule as of the date hereof as a Member and who has executed this Agreement or a counterpart thereof (each, an "**Initial Member**"); and (b) and each Person who is hereafter admitted as a Member in accordance with the terms of this Agreement and the Delaware Act, in each case so long as such Person is shown on the Company's books and records as the owner of one or more Units. The Members shall constitute the "members" (as that term is defined in the Delaware Act) of the Company.

"**Member Nonrecourse Debt**" means "partner nonrecourse debt" as defined in Treasury Regulation Section 1.704-2(b)(4), substituting the term "Company" for the term "partnership" and the term "Member" for the term "partner" as the context requires.

"**Member Nonrecourse Debt Minimum Gain**" means an amount, with respect to each Member Nonrecourse Debt, equal to the Company Minimum Gain that would result if the Member Nonrecourse Debt were treated as a Nonrecourse Liability, determined in accordance with Treasury Regulation Section 1.704-2(i)(3).

"**Member Nonrecourse Deduction**" means "partner nonrecourse deduction" as defined in Treasury Regulation Section 1.704-2(i), substituting the term "Member" for the term "partner" as the context requires.

"**Members Schedule**" has the meaning set forth in Section 3.01.

49

"Membership Interest" means an interest in the Company owned by a Member, including such Member's right (based on the type and class of Unit or Units held by such Member), as applicable, (a) to a Distributive share of Net Income, Net Losses and other items of income, gain, loss and deduction of the Company; (b) to a Distributive share of the assets of the Company; (c) to vote on, consent to or otherwise participate in any decision of the Members as provided in this Agreement; and (d) to any and all other benefits to which such Member may be entitled as provided in this Agreement or the Delaware Act.

"Misallocated Item" has the meaning set forth in Section 6.05.

"Net Income" and "Net Loss" mean, for each Fiscal Year or other period specified in this Agreement, an amount equal to the Company's taxable income or taxable loss, or particular items thereof, determined in accordance with Code Section 703(a) (where, for this purpose, all items of income, gain, loss or deduction required to be stated separately pursuant to Code Section 703(a)(1) shall be included in taxable income or taxable loss), but with the following adjustments:

(a) any income realized by the Company that is exempt from federal income taxation, as described in Code Section 705(a)(1)(B), shall be added to such taxable income or taxable loss, notwithstanding that such income is not includable in gross income;

(b) any expenditures of the Company described in Code Section 705(a)(2)(B), including any items treated under Treasury Regulation Section 1.704-1(b)(2)(iv)(i) as items described in Code Section 705(a)(2)(B), shall be subtracted from such taxable income or taxable loss, notwithstanding that such expenditures are not deductible for federal income tax purposes;

(c) any gain or loss resulting from any disposition of Company property with respect to which gain or loss is recognized for federal income tax purposes shall be computed by reference to the Book Value of the property so disposed, notwithstanding that the adjusted tax basis of such property differs from its Book Value;

(d) any items of depreciation, amortization and other cost recovery deductions with respect to Company property having a Book Value that differs from its adjusted tax basis shall be computed by reference to the property's Book Value (as adjusted for Book Depreciation) in accordance with Treasury Regulation Section 1.704-1(b)(2)(iv)(g);

(e) if the Book Value of any Company property is adjusted as provided in the definition of Book Value, then the amount of such adjustment shall be treated as an item of gain or loss and included in the computation of such taxable income or taxable loss; and

(f) . to the extent an adjustment to the adjusted tax basis of any Company property pursuant to Code Sections 732(d), 734(b) or 743(b) is required, pursuant to Treasury Regulation Section 1.704 1(b)(2)(iv)(*m*), to be taken into account in determining Capital Accounts, the amount of such adjustment to the Capital Accounts shall be treated as an item of gain (if the adjustment increases the basis of the asset) or loss (if the adjustment decreases such basis).

"New Interests" has the meaning set forth in Section 3.04.

"New Securities" has the meaning set forth in Section 9.01(b).

"Non-Exercising Member" has the meaning set forth in Section 9.01(e).

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
Exhibit    Page 9 of 16

"Nonrecourse Liability" has the meaning set forth in Treasury Regulations Section 1.704-2(b)(3).

"Officers" has the meaning set forth in Section 8.08.

"Over-allotment Exercise Period" has the meaning set forth in Section 9.01(e).

"Over-allotment Notice" has the meaning set forth in Section 9.01(e).

"Partnership Representative" has the meaning set forth in Section 12.04.

"Permitted Transfer" means a Transfer of Units carried out pursuant to Section 10.02. "Permitted Transferee" means a recipient of a Permitted Transfer.

"Person" means an individual, corporation, partnership, joint venture, limited liability company, Governmental Authority, unincorporated organization, trust, association or other entity.

"Pre-emptive Member" has the meaning set forth in Section 9.01(a).

"Pro Rata Portion" means, for purposes of Section 9.01, with respect to any Pre-emptive Member holding Units, on any issuance date for New Securities, a fraction determined by dividing (i) the number of Units on a Fully Diluted Basis owned by such Pre-emptive Member immediately prior to such issuance by (ii) the total number of Units on a Fully Diluted Basis held by the Members on such date immediately prior to such issuance; and

"Profits Interest" has the meaning set forth in Section 3.03(c).

"Prospective Purchaser" has the meaning set forth in Section 9.01(c).

"Qualified Member" has the meaning set forth in Section 12.01.

"Quarterly Estimated Tax Amount" of a Member for any calendar quarter of a Fiscal Year means the excess, if any of (a) the product of (i) a quarter (¼) in the case of the first calendar quarter of the Fiscal Year, half (½) in the case of the second calendar quarter of the Fiscal Year, three-quarters (¾) in the case of the third calendar quarter of the Fiscal Year, and one (1) in the case of the fourth calendar quarter of the Fiscal Year and (ii) the Member's Estimated Tax Amount for such Fiscal Year over (b) all Distributions previously made during such Fiscal Year to such Member.

"Regulatory Allocations" has the meaning set forth in Section 6.02(d).

"Representative" means, with respect to any Person, any and all directors, officers, employees, consultants, financial advisors, counsel, accountants and other agents of such Person.

"Repurchase Notice" has the meaning set forth in Section 10.05(b)(i).

"Repurchased Units" has the meaning set forth in Section 10.05(b)(i).

"Securities Act" means the Securities Act of 1933, as amended, or any successor federal statute, and the rules and regulations thereunder, which shall be in effect at the time.

"Service Provider" has the meaning set forth in Section 3.03.

"Shortfall Amount" has the meaning set forth in Section 7.04(b).

51

4819-6733-0120 v6
2939908-000001

Case 3:18-bk-07868   Doc 63-3   Filed 03/05/19   Entered 03/05/19 10:13:16   Desc
         Exhibit    Page 10 of 16

"**Subsidiary**" means, with respect to any Person, any other Person of which a majority of the outstanding shares or other equity interests having the power to vote for directors or comparable managers are owned, directly or indirectly, by the first Person.

"**Tax Advance**" has the meaning set forth in Section 7.04(a).

"**Tax Amount**" of a Member for a Fiscal Year means the product of (a) the Tax Rate for such Fiscal Year and (b) the Adjusted Taxable Income of the Member for such Fiscal Year with respect to its Units.

"**Tax Matters Member**" has the meaning set forth in Section 12.04.

"**Tax Rate**" of a Member, for any period, means the highest marginal blended federal, state and local tax rate applicable to ordinary income, qualified dividend income or capital gains, as appropriate, for such period for an individual residing in Nashville, Tennessee, taking into account for federal income tax purposes, the deductibility of state and local taxes and any applicable limitations on such deductions.

"**Taxing Authority**" has the meaning set forth in Section 7.05(b).

"**Third Party Purchaser**" means any Person who, immediately prior to the contemplated transaction, (a) does not directly or indirectly own or have the right to acquire any outstanding Units (or Unit Equivalents) or (b) is not a Permitted Transferee of any Person who directly or indirectly owns or has the right to acquire any Units (or Unit Equivalents).

"**Transfer**" means to, directly or indirectly, sell, transfer, assign, pledge, encumber, hypothecate or similarly dispose of, either voluntarily or involuntarily, by operation of law or otherwise, or to enter into any contract, option or other arrangement or understanding with respect to the sale, transfer, assignment, pledge, encumbrance, hypothecation or similar disposition of, any Units owned by a Person or any interest (including a beneficial interest) in any Units or Unit Equivalents owned by a Person. "**Transfer**" when used as a noun shall have a correlative meaning. "**Transferor**" and "**Transferee**" mean a Person who makes or receives a Transfer, respectively.

"**Treasury Regulations**" means the final or temporary regulations issued by the United States Department of Treasury pursuant to its authority under the Code, and any successor regulations.

"**Unallocated Item**" has the meaning set forth in Section 6.05.

"**Unit**" means a unit representing a fractional part of the Membership Interests of the Members and, unless otherwise provided, shall include all types of classes of Units, including the common Units and the Incentive Units; provided, that any type or class of Unit shall have the privileges, preferences, duties, liabilities, obligations and rights set forth in this Agreement and the Membership Interests represented by such type or class or series of Unit shall be determined in accordance with such privileges, preference, duties, liabilities, obligations and rights.

"**Unit Equivalents**" means any security or obligation that is by its terms, directly or indirectly, convertible into, exchangeable or exercisable for Units, and any option, warrant or other right to subscribe for, purchase or acquire Units.

"**Withholding Advances**" has the meaning set forth in Section 7.05(b).

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
              Exhibit      Page 11 of 16

# EXHIBIT A

## FORM OF JOINDER AGREEMENT

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
Exhibit    Page 12 of 16

## SCHEDULE A

## MEMBERS SCHEDULE

| Member Name and Address | Capital Contribution | Units | Membership Interest |
|---|---|---|---|
| Don Bivacca<br>2455 Durham Manor Dr<br>Franklin TN 37064 | | 225 | 22.5% |
| Chris Kelly<br>210 Paddock Lane<br>Nashville, TN 37205 | | 225 | 22.5% |
| Brady Sturgeon<br>1520 Greenbriar Dr.<br>Allen, TX 75013 | | 150 | 15% |
| Brandt Gamble | | 200 | 20% |
| Michele Sexton | | 200 | 20% |
| Total: | | 1,000 | 100% |

4819-6733-0120 v6
2939908-000001

Case 3:18-bk-07868    Doc 63-3    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
Exhibit    Page 13 of 16

## SCHEDULE B

## MANAGERS SCHEDULE

Manager Name and Address

Don Bivacca

2455 Durham Manor Dr
Franklin TN 37064

Chris Kelly
210 Paddock Lane

Nashville, TN 37205

55

4819-6733-0120 v6
2939908-000001

# Roxborough Memorial Hospital

TO: MEDICAL STAFF DATE: September 18, 2018

FROM: MATT SHELAK, CEO

---

I am pleased to announce that Roxborough Memorial Hospital has contracted with Progressive Emergency Physicians (PEP) as our Professional Services partner. This group will replace Legacy Physician Partners in the Emergency Department effective January 11, 2019.

PEP, a wholly physician owned and operated practice of Board certified emergency physicians was incorporated in 2013. They currently manage more than 320,000 visits spread across 6 facilities. You can see more information on the group by accessing their website at https://pephealth.net/

PEP will be onsite to meet on several occasions prior to January. Members of their executive team will be here today from 10am-3pm in the ACR if anyone would like to stop by.

Roxborough Memorial Hospital | 5800 Ridge Avenue | Philadelphia, PA 19128
Tel 215/483-9900 | *RoxboroughMemorial.com*

EXHIBIT

Case 3:18-bk-07868    Doc 63-    Filed 03/05/19    Entered 03/05/19 10:13:16    Desc
Exhibit    Page 15 of 16

| From: | Michele Sexton |
|---|---|
| To: | Morgan, Russ; Titus, John; brant.j.gamble@gmail.com; Palmer, Jason |
| Subject: | Fwd: Termination of Employment |
| Date: | Sunday, September 16, 2018 8:12:29 AM |

Redacted

Begin forwarded message:

From: Chris Kelly <chris.kelly@legacyphysicianpartners.com>
Date: September 16, 2018 at 8:04:01 AM CDT
To: "Michelesexton@outlook.com" <Michelesexton@outlook.com>
Subject: **Termination of Employment**

Michele,

Effective immediately, as a result of your actions that are inconsistent with your duties to Legacy Physician Partners, your employment is terminated for cause. You will have no further access to to the office. Should you need to collect any personal items, please have your counsel coordinate with our counsel.

Christopher R. Kelly
CEO, Legacy Physician Partners

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**EXHIBIT C**